## Barnes v. Spaid

*Howard R. Berninger*, for plaintiff.

*Cleveland C. Hummel*, for defendants.

KREISHER, P. J., July 6, 1971.—The above-captioned declaratory judgment proceeding was com-

menced by the filing of a petition on July 20, 1970. Service of the said petition was made on July 31st and an answer thereto was filed by defendants on September 11, 1970. Said answer admits all of the facts alleged in the petition, but denies the legal conclusions applied to said facts.

The case involves a family dispute over a right-of-way, so the matter was continued from time to time pending amicable negotiations. Counsel have now filed written briefs requesting court disposition of the matter on the pleadings, since all efforts of an amicable settlement have failed to date and imminent litigation is pending between the parties.

In 1921 Frank and Cora Spaid purchased approximately four acres of unseated land located on the west side of Market Street in the Village of Mifflinville, this county, which was bounded on the north by the land of Ezra Hetler. The couple raised a large family in the homestead located to the east or on the eastern portion of the unseated land. In the early fifties, the said four acres were divided into lots which were then conveyed to their respective children.

On July 13, 1953, a one and a half acre lot immediately west of the lots fronting on Market Street was conveyed by the parents to the daughter, Leila, who was married to Livingston Barnes. A 14-foot driveway from Market Street to said lot was established along the northern boundary line next to the Hetler property. The parents retained title to the lot fronting on Market Street until April 16, 1955, when they deeded it to a son, Donald and his wife, Gloria.

The deed was prepared in the office of a justice of the peace in said village, and in addition to the description and recital, it contains the following sentence:

"Excepting and reserving, however, a strip of land

fourteen feet wide on the north side of this tract running along of Ezra Hetler from Market Street to land of Livingston Barnes, said strip of land to be used as a driveway for Livingston Barnes."

The dominant tenants made continuous and uninterrupted use of the driveway over the servient tenants' land until April 22, 1970, at which time the driveway was barricaded by the servient tenants because they were advised the right-of-way was terminated by the death of Livingston Barnes on October 5, 1968.

It is conceded the parents used this driveway for many years prior to 1953 and that Leila Barnes owns a lot fronting on Market Street three lots south of the Donald Spaid lot. However, the narrow issue involved in this case is confined to the legal effect to be given to the sentence quoted from the deed, so we are not concerned with either ways of necessity or prescription.

The sole issue to be determined in light of the foregoing admitted facts is whether the stated reservation creates a privilege running with the respective parcels of land or is it confined only to the person named in the grant creating the privilege.

The words of a grant are to receive interpretation in accordance with the intention of the parties at the time of executing them. Effect must be given that intention if the same is clear and if it can be done, consistently with legal principles and justice: Hammond v. Hammond, 258 Pa. 51, 55.

A right-of-way created by grant from a common owner of both lots is in the nature of a covenant running with the land and appurtenant thereto. The terms thereof must be interpreted in favor of the owners of the dominant estate and against the owners of the servient estate: Duncan v. Gheen, 185 Pa. Superior Ct., 328, 331.

The use of the word "heirs" is not required to create an easement running with the land by a common grantor, even though it is necessary in a conveyance of a fee in the land itself because in such a case the fee is in neither grantee, but remains in the grantor: Koehler v. Ziegler, 2 Lehigh 119 (1906), and Mandle v. Gharing, 256 Pa. 121. The English re-grant fiction is not resorted to in Pennsylvania, sec. 316, Tiffany Real Property, 704.

In the case of Domin v. Sica, 49 Lack. Jurist, 25 (1947), the first paragraph of the syllabus states:

"1. A reservation in a deed by a common grantor to grantees of adjoining lots as to their common use of a driveway between their parcels of land creates an easement or privilege running with the respective parcels of land."

A host of cases is cited in the footnote for the following statement in the case of Tosh v. Witts, 381 Pa. 255, 258:

"The driveway being thus sharply defined it would seem that plaintiffs had brought their case well within the established principle that, where an owner of land subjects part of it to an open, visible, permanent and continuous servitude or easement in favor of another part and then aliens either, the purchaser takes subject to the burden or the benefit as the case may be, and this irrespective of whether or not the easement constituted a necessary right of way."

Reflecting upon the facts to gather the intentions of the parties in the light of the foregoing principles, it appears crystal clear that the parents intended their daughter Leila, her husband and heirs were to enjoy the use of the same right-of-way to Market Street that the parents had used over the years. The mere fact the daughter acquired title to a street front lot which adjoins her larger lot in the rear is of no moment or

consequence to extinguish an entirely different right or privilege. Counsel for defendants in his oral argument relied largely on this alternate route theory to support his claim, but we conclude this just happens to be a fortuitous circumstance with no legal effect whatsoever on the issue before the court.

When defendants accepted their deed, the driveway was in existence and the reservation in regard thereto was contained in the deed. Their intentions at that time must have been that their lot was subjected to a perpetual servitude, and this reasoning is supported by their delay of over two years in erecting the said barricade following Livingston Barnes' death. Furthermore, we are not unmindful of the advanced age and meager ability of the scrivener of the deed. We are satisfied he never intended the daughter's right-of-way to die with her husband, nor did any of the other parties so intend at the time of the conveyance in our opinion. The wording of the reservation, read in the light of the intention of the parties, clearly means that the right was granted to the Livingston Barnes lot and not to him personally or as an individual. Defendant's interpretation would have even denied the daughter the right to use the way. Certainly, such a result was not the intention of the parties, but rather the grant ran with the land and the way was reserved for all occupants of the land, their visitors and business invitees.

We conclude the barricade was erected as a pure afterthought on what we believe was poor legal advice.

The modern trend of courts of justice is to be less strict in the application of technicalities when an injustice results therefrom. Therefore, we enter the following:

## DECREE NISI

And now, July 6, 1971, it is ordered and decreed that defendants, their heirs and assigns be and they

are hereby perpetually enjoined from interfering in any way with the free use of the 14-foot driveway along their northern boundary line from Market Street to the lot of plaintiff, her heirs and assigns in the rear. Each party to pay their own costs.

The prothonotary is directed to enter this decree nisi and give notice to the parties or their counsel that if no exceptions are filed hereto within 20 days after receipt of said notice, this decree will be entered as a final decree upon praecipe filed as of course.